Chester and others. Good morning, my name is William Martin. I am here for the plaintiff. Speak right into the microphone, please. Yes, sir. William Martin for the plaintiff Derek Mastromonaco. May it please the court. I'd like to take you directly to Friday afternoon at 1245. Mr. Mastromonaco has been in police custody since 7 o'clock the night before. It's our contention that he needed no medical treatment, but in all events, the medical treatment that he was allegedly receiving on Friday morning had come to an end. The town court in the town of Cortland, the justice court, was open. It was open for arraignment. Mr. Mastromonaco was handcuffed to the bed in the emergency department at the hospital, even though he was no longer getting any treatment. He was not taken to the proper court under New York state law. He was sent to the psychiatric part of the hospital, was he not? He was never sent to the psychiatric part of the hospital. That comes up in the brief. And I point out to you that all if you look at all of the medical records, all the doctor's notes, they're all from the emergency department. There are no records from the third floor or the second floor or the West Wing where the psychiatry department may or may not be. I also suggest to you that the reference the repeated references in the appellate brief actually make out our case because the police did not because they mentioned they rely heavily on a diagnosis of schizophrenia, which I don't know where they get that from, but the police did not send him to the behavioral health center. Did they not send him where you take people who you believe have a mental disturbance? They took him to the medical center for medical treatment. Wasn't he arraigned at the hospital? I beg your pardon? Wasn't he arraigned at the hospital? Okay. So at some time between 1245 in the afternoon and around 530, apparently he's still being detained at the hospital. Someone from... If you have somebody whom the police think has been acting oddly, and there's no doubt that your client was acting oddly for whatever reason, isn't their arguable probable cause sufficient to give rise to qualified immunity in what the police did? I mean, this is not a simple case of an arrest or something of that sort. It is somebody who the police have reason to believe has some problems. And do we want to keep the police from doing... If I may respond, the argument with respect to qualified immunity for these police officers has to end around 1 o'clock in the morning. That's in the morning prior to this. After that point, all of the officers that are named defendants here, and I deposed every single officer at his bedside and I deposed every single supervisor after that, and you look in the appellee brief today, the response is, we don't know. We don't know who made the decisions. We don't know who called the... We don't know who decided to detain him, keep him there, and not drive him to Courtland. We don't know who called the judge to have him arraigned. So to answer your question... What happened at the time that you say the court was open and he was no longer in the emergency unit? What did they do with him then? Thank you, sir. And I will answer that if you would forgive me and just allow me to just make my last point because your last point was right on. It's my position here that you cannot say it wasn't me, I wasn't involved, and then still ask this court for qualified immunity. Under qualified immunity, you have to step up and say, yes, I made those decisions, but I was correct or I was close enough. And you tell me that you didn't answer my question. Not the new one. What happened at that time? What did they do with your client? Absolutely nothing. And I suggest... Nothing? When you say they, the police did nothing. They kept him handcuffed at a bed in the emergency department. He was not receiving treatment, and he was not brought before a judge. He was just sitting there handcuffed. He was kept in the hospital. But he was arraigned. Wasn't he arraigned at the hospital? He was arraigned about 5.30 p.m., 6 o'clock at night. That's a full five hours later. Okay? So you say there was an entire afternoon that they should have brought him to the proper court, and had they, based on the minor charges, he would have been out the door, and that's... Why did they keep him in the hospital? I mean, he was in the hospital. And, you know, isn't it sensible to say that people who found somebody, the policeman who found somebody who was acting oddly and brought him to the hospital, kept him in the hospital? And that that is not an, you know, not so bad a thing that you, that a policeman shouldn't get qualified immunity for keeping him in the hospital. Okay. I submit in my brief ten facts that suggest to show animus and ill will by these officers. Yes. There is also some possibility they called him an asshole. Yes. We know that. But the question is, is that enough to overcome the notion that, after all, they were keeping him in the hospital because he was acting oddly? I mean, the fact that they called him a name for acting oddly is not nice, but doesn't... Well, look at what they, if I could respond this way, sir. Look what they did do. They violated your ruling in Mastry, this Court's ruling, and they had a judge brought in who was completely without jurisdiction to do what he did here. Why did they do that? They did that because they didn't want him to take him home to the local judge where his local family would have been there at the arraignment, and based on the minor charges, they, they would have, he would have been released and given a court date. They wanted him, because they thought he was acting like an asshole, they wanted to make sure he spent that weekend in jail. So they violated your holding, the Court's holding, in that 1998 case, and they called a judge with, completely without jurisdiction. They duped him into thinking this man needed to stay at the hospital. There is no medical evidence that suggests he needed to stay at the hospital. So what I'm suggesting to you, sir, is you don't get qualified immunity when you can't prove what you did with the defendant. It shouldn't, the plaintiff, I'm sorry, it shouldn't be the plaintiff's burden to, thank you, it shouldn't be the plaintiff's burden to prove what they did with him. And then they ultimately violated your 1998 decision by calling in a judge without authority to arraign him just to ensure that he spent the weekend. The, again, there are ten different factors that show the ill will. It's, and, and with respect to the initial detention in this case, the, the appellees constantly rely on disputed facts. The, the, the, there was no marijuana smoked in that vehicle. There was no burnt. Well, tell me, you know, I'm not an expert on that, but can't you smell marijuana even if it isn't smoked? I mean, if there, the marijuana was out, and don't people smell that even if it's out? I mean, I, you know. Let me say this, sir. I specifically asked Sergeant Pavone whether it smelled like the, the, the smell, the, the, the different smell of burnt, meaning smoked marijuana. And his, I, I followed up with that, and his answer is in the brief, he said burnt, smoked marijuana. Now, that's what he insisted he smelled. That, that is an issue, and that was relied on by the district court for the, for the, to support the Terry stop and the subsequent intrusions. And that was relied on in the appellee's brief, and that is a disputed issue of fact. Mr. Nate Lieber, I'm sorry, Nate said that they didn't smoke. The plaintiff said he didn't smoke. There is nothing burnt. There's nothing burnt in the vehicle. These alleged roaches that are in the ashtray that the sergeant claims he saw were never tested. Yes, the, the, the marijuana in the tray in the Frisbee was tested. There is a lab report for marijuana in the Frisbee. But this alleged, these alleged roaches that he saw in the ashtray were never tested. They were picked up but not tested? They were picked up. They are still in the county police headquarters. They are, they are in the evidence locker. They were never tested. They do not have roaches. We're challenging that. We're challenging the glassy eyes. All of the facts that gave him probable cause or arguable probable cause are facts that are in dispute in this case. The flashing of the lights. The plaintiff said this. What am I to make of the fact that if you say correctly the policeman said I smelled smoked marijuana and there wasn't smoke but there was a smell of marijuana. Do I hold the policeman to knowing the difference between smoked marijuana and plain marijuana? Well, I mean, let's say a policeman said I smelled smoked marijuana and it wasn't smoke but it was in plain marijuana. Does that mean that the policeman is not smelling something? I don't know because I don't know anything about that stuff. I specifically asked him that. I wanted to make clear that his testimony was clear as to what he smelled and he clearly said the smoke. So, yes, I suggest to you. So if Sergeant Pavone is credible, isn't that enough for arguable probable cause? Absolutely not. I mean, why not? It's a very low standard, arguable probable cause. Fair enough. But the plaintiff and the occupant of the vehicle said that there was nothing smoked in there. Yet there was marijuana in the car. Much later they found marijuana in the car, yes. Unsmoked marijuana spread out on a Frisbee as though someone was going to roll something with it. And one more point, the K2. Remember now the K2 that the Sergeant McNulty sends them to the hospital for, this alleged K2. There's no marijuana in K2. K2 is what they were smoking in those bodegas for a while because it gave them the effect of marijuana and it was legal until they caught on and they outlawed it. K2, I suggest to you that the K2 further supports the plaintiff's claim that Pavone is full of it when he says he smelled burnt, smoked marijuana. Why in the world would someone. . . But they said they were worried about K2. You're right. But K2, someone who's smoking marijuana doesn't. . . K2 not smoked. It's just ingested out. I believe it's smoked, but it's not. There's no marijuana in K2. That's the fun of it. It was legal at bodegas for a short period of time and it gave those people the feeling of marijuana. I submit to you that the K2 argument of McNulty supports plaintiff's claim that Pavone did not smoke. Thank you. Thank you very much. Thank you, counsel. Good morning, Your Honors. Good morning, Your Honors. My name is John Nona. I'm the Westchester County attorney and with me is David Chen, associate county attorney. What I would like to do is take the Court through the two points that the appellant's counsel has raised, the whole issue of what happened at the hospital and the arraignment, and then this question of the odor of marijuana. So what happened at the hospital? The hospital records are actually in the record at pages 512 to 527 of the appendix. The hospital records show that when he got to the hospital, this was sometime at 145 in the morning of November 8th, he was threatening staff. He had altered mental status, exhibiting paranoid behavior. He was without decision-making authority. They contacted his father, who told the hospital he smoked pot every day and had a psychiatric issue. What they did, and the records will show you, they did tests. They did a CAT scan. They were concerned about this behavior. They did a series of tests in the emergency room, and while he was in observation, between 145 in the morning, and you know what it's like in an emergency room, until 1245 p.m., when he was, in fact, discharged to the psychiatric unit. He was discharged to a psychiatric unit. In the hospital. Yes. That's what I asked, and that's what opposing counsel said the opposite. I thought that the records showed what you said. At page 516 of the record, you will see at the bottom of the medical records, that he was discharged to the hospital psychiatric unit. Although he wasn't getting any treatment. Well, I think they were concerned about his behavior, and he had a diagnosis of schizophrenia. I don't know what, we don't know what treatment he had. There's nothing in the record to show what treatment he had. Let me just step back and ask you one question. Sure. If we find there was arguable probable cause for the stop, does that protect the unlawful detention claim or not? I think you have to look at each phase separately. Oh, the answer is it doesn't protect the. I think it does from the point on, but I also think the record is very clear that once he's in the, quote, custody or being cared for at the hospital, that is almost a separate issue to be looked at. Well, that's a separate claim of unlawful detention. Yes. And I think there's no basis for that claim because. That's the merits. Yes. But I'm asking whether probable cause, which shields most of the other claims that plaintiff is making, would that shield a complaint for unlawful detention? Yes, because at the hospital, he's out of the control of the police officers. The police officers have qualified immunity for the stop and the arguable probable cause for the arrest. I'd like to come to an important point, if I may, the question of when he was arraigned, because the appellant's counsel claimed he wasn't arraigned until he was discharged from the hospital at 522, into the custody of the county jail. His arraignment took place while he was in the emergency room, and that is reflected at page 549 in the record where Judge Ponzini writes, in fact, possible psychiatric issues and drug issues arraigned in the emergency room. At what time was that? We know it had to be before 1245 p.m., because that's when he was discharged from the emergency room to the psychiatric unit. So it had to be before 1245 p.m., well within the time frame that is reasonable for an arraignment, about 18 hours rather than 48 hours. If I may, I would like to go to this issue of the fact that he was arraigned by the town judge of Mount Pleasant. There's absolutely no evidence in the record that the police officers called Judge Ponzini to get him to come there, because he was a ‑‑ because they wanted to keep the plaintiff in the hospital. Judge Ponzini was deposed, and he testified for 20 years it's been the procedure in Westchester County for arraignments in the jail, which is in the town of Mount Pleasant, for him to do arraignments, and that is permitted by the CPLR, 170.15.1, which Judge Bracetti relied upon in his decision. In the jail or the hospital? To be arraigned in the hospital, because someone cannot be brought to the local court if you're being in the hospital being observed or being cared for. So this is one of his sidelines, Justice Ponzini, he would arraign people in the hospital. No, it's part of his obligations as a Mount Pleasant town justice, because the hospital is in the town of Mount Pleasant. It's within that jurisdiction. They're gathered as much. And that's why he's called to the hospital. He has jurisdiction over that location.  These are special circumstances where a judge can arraign an individual who is not where the accusatory instrument is not returnable in that court. I'd now like to turn to the issue of the odor of marijuana. And the plaintiff claims, the Appellant's Counsel claims, that there is a basis here to find a material issue of fact, because the plaintiff claims there was no odor of marijuana in the car. And the passenger claims they weren't smoking. But what the passenger did testify very clearly, and that's at page 393 of the record, Mr. Lieber testified that there was an odor. When he got in the car, there was an odor of marijuana, and not only in the car, but on the plaintiff's clothes. So here you have a situation. So the question is that the policeman said, I smelled the odor of burnt marijuana, and there is no evidence whatever that there was any burnt marijuana. There is plenty of evidence that there was marijuana and that there was odor of marijuana. So do we make something of the difference between burnt and unburnt? I think burnt marijuana smells just like regular marijuana. And according to Mr. Lieber, who was the passenger, flatly contradicts the plaintiff. The reason why the plaintiff's self-serving testimony cannot be accepted is because it's flatly contradicted by the record. It's also contradicted by the fact that when he went to the medical center and they tested him, he tested positive for marijuana. But more importantly, his own passenger testified the car smelled of marijuana. I am comfortable saying that the policeman could have smelled marijuana and therefore did a Terry stop on the basis of it. The problem is that the policeman said, I smelled burnt marijuana. And is that something we should pay attention to as to the difference between the two? And frankly, I have no idea. But if they are the smell of the same, then I don't know that that makes any difference. If there is a significant difference, we may have a problem. I respectfully submit I don't think there's a significant difference between the smell of burnt marijuana or the smell of marijuana. In addition, what Mr. Lieber also testified was that he believed, when he got in the car, that the plaintiff had been smoking marijuana. In the way he acted, he talked about the plaintiff having glassy eyes. You can read that in his deposition. It's about pages 393 to about 401 in the record. And you're getting into something which is disputed. Well, it's not disputed except for the plaintiff's own self-serving testimony, and you don't have to accept that under the law. Let's go back to the Terry stop. Okay. What made Sergeant Pavone attracted? What attracted him to this car? Well, his testimony is the following, that the school parking lot was an area that had been known for crimes. There was criminal activity in the past, vandalism, theft, criminal mischief, racing through the lot. So he drives through the lot. He sees a car away from the athletic fields with the engine running, away from everything. But so far, no criminal activity. He has a reasonable suspicion that there may be criminal activity. He doesn't see any criminal activity. He drives around and comes back. And this car, again, in this remote area of the parking lot with the automobile engine running in an area that is known to have criminal activity. Is that enough to go over to the car and talk to them? I believe that would be enough at that point in time. Is there any case that says that it's enough if you're in a high crime area to just stop someone and say, roll down your window, let me talk to you? Is that enough? Well, it's also the car is running. And why is it running in the evening at dusk in a parking lot where there's no school activities going? Excuse me? To keep the heater on or the radio on. It's only November 7th. But is that a crime? That's what I'm asking. It doesn't have to be a crime. It just has to be reasonable suspicion. What reasonable suspicion does he have just because the car is in a parking lot in a high crime area and it's running? So far, things that I myself have done. What gives a police officer the right to talk to them? And then he approaches the car and the car tries to drive away. I think that's an additional fact. I know I've read your dissent in U.S. v. Santelon. I know in that case the police relied solely on affertive looks. Here they were looking down, too. But that's not the only factor that Pravone relied upon here. He relied upon all these factors. And I respectfully submit under the Second Circuit standards for reasonable suspicions articulated in U.S. v. Bell, Padilla, and Cormier. Here you look at these circumstances through the eyes of a reasonable and cautious police officer. I think he was being cautious. This was a very brief stop. It escalated very quickly once the window rolled down and he smelled whether it was burnt marijuana or marijuana and when the plaintiff started exhibiting bizarre behavior. You are saying that under our misguided precedence he could get there enough to get the window open because that was almost trivial. A simple Terry stop. And that at that point, you know, there was arguable probable cause. Yes, Your Honor. Okay. If you have no other questions, Judge Pooler, I'll be seated. Thank you.  And Mr. Martin, you did not reserve time for rebuttal, so we will reserve decision. Thank you both very much.